Your Honor, we've raised the issue here as to whether the regulation that it provides for reopening of deportation proceedings would give us a continued automatic stay in light of the facts of this case. Here, Mr. Palou missed his hearing in September 1997. His attorney at that time, within less than 30 days, filed his motion to the immigration judge asking for the in absentia order to be set aside. So immediately under the regulation, he had the automatic stay. He appealed that denial of the reopening and the board ultimately made a decision in 1999 to dismiss the appeal from the denial of the motion to reopen. After Mr. Palou was taken into custody and I became his attorney of record, we filed for him a motion with the board once again to seek to reopen or set aside that in absentia order. Our position simply being that we believe that the regulation provides, continues to provide an automatic stay. Is the automatic stay the only issue on this appeal? I don't think so, Your Honor. I think that it's expansive here. The question looks to the Ranjit Singh case that Your Honors are familiar with as far as the failure to appear. Factually, in our case, we have someone who, as early as 1993, through his wife, who was a lawful permanent resident, filed a visa petition and almost four years later the Immigration Service finally got around to approving that visa petition. So it's about February 1997 when they ultimately approve it. Then she becomes a citizen in 1999. By that time, they've already filed with the court, they had already filed before he missed his hearing, an application for adjustment of status, what would be the green card application and so forth. So what remedy other than a stay are you seeking here and in your habeas petition? Well, because it's obviously because he's been deported, and I gather this is a transitional rules case, that would seem to make the request for a stay moot. I think that the remedy ultimately for us is going to be one for whether Mr. Paloo remains out of the country for five or ten years as a result of that order of deportation, or whether this court finds that under the circumstances that stay was in place and that the court should have reopened, because certainly if the court was in a position to grant him voluntary departure, when he applies at the American embassy to return to the United States, he is not subject to that limitation, if you will, in terms of being able to come back. With the order of deportation, he will need to remain outside of the United States until the Attorney General grants him permission to reapply after deportation, until that waiver is actually granted. I would imagine that the court could direct the agency to bring him back? That's what I couldn't discern from your habeas petition. It looked as though it was mostly directed at contesting the application of the automatic stay, and of course it did have the request for a temporary stay in it. What other relief were you seeking aside from reopening to obtain a stay in the habeas petition? The habeas petition contemplated that the court had jurisdiction to look at the 1999 order of the board. In 1999, we have the board issuing a decision that essentially tells us we've looked at the record, and from the record, it's clear to us that there's been compliance. Well, interestingly enough, for the court and for us, we have no transcripts of any hearings that have ever taken place, because an in absentia order by the agency does not trigger, if you will, transcripts to be produced by the agency. Consequently, we don't know other than that one page that was given to them in April, April 1, 1997, whether the judge actually ever went on the record, what it was that she said to them. They walked away from that hearing thinking that the next hearing would be October 26 as opposed to September 26. Obviously, that was incorrect, and they missed out on an opportunity to ultimately, finally regularize the status of Mr. Palu. That didn't happen. So I believe that the district court, part of their review, would contemplate looking at that 1999 order of the board and to evaluate whether there was, in fact, proper notice that procedures followed in order to allow the respondent, or Mr. Palu, then responded in deportation proceedings to return to court. Because if those procedures weren't followed, then the order itself, the in absentia order, is defective from the very beginning. I think that what we attempted to present to the court and also to the board, and incidentally, our motion remains pending before the Board of Immigration Appeals even today. What motion? The motion that we filed in December simultaneously with the habeas petition. It's still pending. They have done that. Motion to reopen? Yes. Don't you have a time on this problem with that, though? Don't you have a timeliness problem with that motion? Well, if you have a change in law, I believe that this circuit has held that a change in law would contemplate not barring that motion, filing that motion. Here we have the Ranjit Singh case, which has facts that are very, very similar to what we have. And certainly we look to that case for guidance in a failure to appear. If an individual has gone to one, two, three, four, five, six hearings, and they have complied with all the requirements of the agency, the fact that they missed that last hearing should not be sufficient to bar them completely from ever going back to the court. So I think that certainly the position of the government is that not only do we have a timeliness problem, but that we're numerically barred. Right, but you won't know that until the BIA rules on your new motion to reopen, right? Yes, although the regulations require for them to dismiss the motion to reopen since Mr. Palu is no longer here as of January 13th, although they haven't ruled on it. But isn't your remedy in that respect to wait until the BIA either dismisses or does something else with that motion to reopen and then seek a petition for review? I would imagine we can look to that remedy with the board. However, when we approach the district court, we approach them because our remedy becomes one that falls on deaf ears. We cannot pursue that remedy with the board unless we have the intervention of the district court that essentially looks at the agency and says, look, if you send him out of the country, when is he ever going to have the---- Well, that's my problem, though, is that now he has been sent out of the country, and if he hadn't, you know, we'd have a live controversy on that issue. But it seems to me under the transitional rules, I know it's different under the permanent rules, but under the transitional rules that makes this appeal fairly moot, and we have to wait until the BIA decides your motion to reopen on the merits and you take a petition from that to reach that issue. Would the court then consider holding this case in abeyance until there's---- Yes, I'm not prejudging. I'm just giving you sort of a reaction on one of your comments on that, but go ahead. I would imagine that if we were given an opportunity to wait, and how long we're going to wait, I don't know, but until the board rules that we can bring that decision together with what we have before the court and maybe fashion some type of remedy for Mr. Palu, because without the intervention either of this court or the agency on its own taking the unusual step of giving him permission to return to the United States, he may find himself waiting for another nine years before he actually returns. Thank you. I want to save just a little bit of time for rebuttal. You have just a few seconds. Thank you, counsel. Ms. Dahl. Good morning. While in the traverse, the petitioner did in fact raise the issue of the motion to reopen. Apparently in the effort to convince the district court that it should act to stay his deportation so that the BIA could rule on his motion, the habeas petition addressed only one issue, and that is whether or not he was entitled to an automatic stay under the regulations. It did not ask for a review of the underlying deportation order, and there was no jurisdiction over that habeas petition under Gutierrez-Chavez because of that. I'm not sure I read Gutierrez-Chavez as broadly as you do. I mean, that's a case that's directed to pure discretionary decisions and falls in Callon and the other case that we've had in our circuit that's directed to that. But I'm not sure it goes so far as to say that if you're not dealing with, for example, construing a statutory obligation, as asserted in this case, that the district court doesn't have jurisdiction. Otherwise, how could our court have reached the decision in Singh if we didn't have jurisdiction? I don't know if the Singh case came up on habeas, Your Honor, or whether it came up on a petition for review. Jack, go ahead. Cruz-Aguilera, Your Honor, says that the habeas jurisdiction under 2241 is limited to statutory and constitutional challenges to the validity of an order of deportation. And in this case, Mr. Palu did not raise such a concern. All he alleged is that the regulation required that he be given an automatic stay. Right. So why isn't that a regulatory, or at least arguably a statutory regulatory concern? I mean, not in how, I guess, the BIA exercised its discretion, but he's contending in this case it's automatic as a matter of law, which seems to me sort of a quintessential 2241 petition. It's not my understanding, Your Honor, that 2241 extends to regulatory issues. And the automatic stay that goes into effect with a timely motion to reopen is a creature of regulation, not statute. The issue is briefed in our responsive papers. With respect to the automatic stay, it only applies with a timely motion to reopen, which has to be brought within 180 days. Right. I understand your position. Counsel indicated that he was asking the district court to step in because Mr. Palu had no other remedy. And, in fact, the BIA itself has the power, should it choose to exercise it, to grant a stay of deportation. So, in fact, Mr. Palu did have an administrative remedy. And it's not, this Court has said that it's not appropriate for the district court or the court of appeals to step in and grant a stay when the BIA itself has the power to do so and has chosen not to exercise that power. There's some suggestion that this Court should be able to fashion a remedy that includes some change to Mr. Palu's immigration status. And that does not appear to be available, Your Honor, because it was not relief that was requested. The only relief that was requested was that his deportation be stayed while he pursued administrative relief. Why shouldn't we defer ruling until that motion is dealt with? I'm sorry, Your Honor? Should we or why should we or should we not defer ruling until the pending motion is dealt with by the BIA? Because if the motion is dealt with by the BIA, then the remedy would be a petition for review, which is direct review, not habeas review, Your Honor. This is a habeas case. There's no reason for this case to remain alive in the absence of jurisdiction when there is an additional remedy of direct review potentially. I don't know what position oil takes with respect to petitions for review of discretionary motions to reopen. I don't believe that the position is taken that that motion to reopen cannot be dealt with by the BIA. So we should dismiss for lack of jurisdiction? Yes, Your Honor. That's the government's position? Yes, Your Honor. If we would dismiss, what would be the effect of the motion to reopen? I mean, can that survive if he's no longer in the country and no longer has a basis for claiming he should have been allowed to remain in the country? It's my understanding that the BIA has an obligation to dismiss any pending immigration proceedings if an alien has been removed. Why they haven't done that in this case, I don't know. But is this case possibly the foot in the door that keeps that door from being closed? Because through this case, he's asserting he should have been allowed to remain in the country during the pendency of the motion. I don't see how, Your Honor. He's still been removed. I mean, unless this Court were to reverse and require the United States to return Mr. Palu, which, again, is relief I don't believe is available. Let's continue, I guess, thinking forward in this case. I gather your position is that the motion to reopen ought to be dismissed for statutory reasons or regulatory reasons. So on appeal from that or from petition for review from that, do you think he has the right to assert these claims that he's asserting today? And he says he's asserted in the habeas petition. It's an interesting question, Your Honor. Unfortunately, I don't deal with petitions for review, and I'm not familiar with the position that Boyle takes with respect to challenging them. I know that there is a case pending right now which is an untimely petition for review. And as far as I know, it's continuing to be pending before this Court. The United States has not taken the position that the Court lacks jurisdiction over it. I believe this Court has often taken the position that the BIA decision on a discretionary motion to reopen, one that's untimely or barred by the numbers, is strictly a discretionary matter on the part of the Attorney General and, therefore, is not reachable on a petition for review. Not to interrupt, but basically I think what you're saying is that if this plays out, you think that the BIA is required to dismiss the motion to reopen. You think probably he could file a petition for review, but we wouldn't have jurisdiction. And if we had jurisdiction, it would be confined to the exercise of discretion on the second or how they exercise their discretion in terms of the timeliness of the second motion to reopen, right? I think that's correct. I think Mr. Powell is quite right as to if we can pretend there's a remedy here, but at the end of the day it doesn't get to the merits of his claim that he's asserting today, right? I mean, that's the way you see it playing out. That is the way I see it playing out. I do believe that unfortunately I did not have the administrative record, so I don't know how long he was sentenced for on his Penal Code 470 conviction. But it appears to me that it's unlikely he was sentenced to a year, in which case he could have brought a petition for direct review with this court back the first time his motion to reopen was denied. And he did not do that. Thank you for your argument, Mr. Quijano. I think you have about 30 seconds. Thank you, Your Honor. The Ranjit Singh case is the case that we brought to this court that was a petition for review and it did not come through habeas. The remedy that we see for Mr. Palu would have to be that the order that has been issued, the in absentia order, that that actually be set aside. And how that would be accomplished, I think, would only occur if this court would keep jurisdiction of this particular case that we have now. And in the event that we have a ruling from the board that we'd be permitted to join that case with this one here. There's no, to my knowledge, and we've done this in the past, I don't believe there's any prohibition in being able to join the cases for judicial economy, both the habeas as well as the petition for review. Thank you. Thank you for your argument. Thank you, both sides, for their argument. The case just argued will be submitted for decision. We'll proceed to the case of Torrio versus the Immigration Service. We seem to have a crowded courtroom today, so those of you who are, for example, counsel on the city of Martinez versus Texaco, if you want to come up and sit in front of the bar, that would free up some seats. All counsel are welcome that are arguing cases today or assisting in argument are welcome to sit in front of the bar. Thank you.      Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Hawkins, Thomas, Clifton